UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH GARLAND, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:18-cv-00428-SEB-DLP |
| GEO GROUP, *et al.*, | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND DIRECTING DISMISSAL OF CLAIMS AND TERMINATION OF DEFENDANTS**

Plaintiff Kenneth Garland is a prisoner confined at the New Castle Correctional Facility (NCCF). Mr. Garland filed this lawsuit on February 14, 2018, raising several issues concerning his medical care at NCCF.

The defendants have moved for summary judgment on two of Mr. Garland's claims, arguing that Mr. Garland failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this lawsuit. For the reasons set forth below, the motion for partial summary judgment must be granted.

## I. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in

the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Garland. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable

2

of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Scope of Motion

On April 26, 2018, the Court screened Mr. Garland's complaint and identified four viable claims, each based on the Eighth Amendment:

- claim against Dr. Ippel for failing to order a proper diet;
- claim against Wexford, GEO Group, Davis, and Winningham for refusing his medical bed;
- claim against Wexford, and Corizon for refusing Lyrica and IV-IG treatment;
- claim against Wexford for refusing medicated tissues.

Dkt. 8 at 6.

The defendants' motion seeks summary judgment only on Mr. Garland's claims regarding refusal of Lyrica and his medical bed. Dkt. 36 at 2. Therefore, the defendants have abandoned their exhaustion defense as to Mr. Garland's diet, IV-IG treatment, and medicated tissue claims, which will continue to move forward. *See* dkt. 33. The sole question at issue in the defendants' motion is whether Mr. Garland exhausted available administrative remedies with respect to the Lyrica and medical-bed claims.

## III. Grievance Procedure

There is no dispute that, during the time before Mr. Garland initiated this lawsuit, an administrative remedy program was available to inmates at NCCF. That remedy program was codified in the Indiana Department of Correction's (IDOC's) Offender Grievance Process (OGP). Dkt. 37-1 at 11–50. The OGP was revised during the time of the events underlying Mr. Garland's

3

claims. For the sake of simplicity, the Court will cite only the 2015 version of the OGP. The Court does not note, and neither party has identified, any difference between the two versions of the OGP that would affect the outcome of this motion. Moreover, Mr. Garland appears to refer to the 2015 version in his response. *See* dkt. 39 at ¶ 1.

By its own terms, an inmate may use the OGP to address numerous issues, including (but not limited to):

1. The substance and requirements of policies, procedures and rules of the Department or facility (including, but not limited to, correspondence, staff treatment. medical or mental health, some visitation, and food service);

2. The way that staff members are interpreting and applying the policies, procedures, or rules of the Department or of the facility.

3. Actions of individual staff, contractors or volunteers; all PREA issues;

4. Acts of reprisal for using the Offender Grievance Process; and,

5. Any other concerns relating to conditions of care or supervision within the Department or its contractors, except as noted in these administrative procedures.

Dkt. 37-1 at 14.

The OGP also identifies certain issues for which no administrative remedy is available. A nonexhaustive list of "non-grievable" issues includes:

1. Federal, State, and local law;

. . .

13. Personal Property Issues; and,

14. Tort Claims.

*Id.* at 14–15.

To complete the OGP (and exhaust its remedies), an inmate must complete the following three steps:

    (i)    An informal attempt to solve a problem or address a concern, which can be followed by;

    (ii)    Submission of a written form outlining the problem or concern and other supporting information, and the response to that submission, which can be followed by;

    (iii)    A written appeal of the response to a higher authority and the response to that appeal. The Department does not require an offender who is satisfied with the result at any step to proceed further with the process.

*Id.* at 13. Because Mr. Garland does not contend that he completed all three steps with respect to his Lyrica or medical-bed claims, the Court need not detail the specific requirements for completing each step.

### IV. Analysis

The defendants' undisputed evidence shows that Mr. Garland filed no grievances regarding his Lyrica claim and that he filed only a formal grievance—which he did not appeal—regarding his medical-bed claims. Dkt. 37-1 at 7, 9, 101–107. Mr. Garland opposes summary judgment by arguing that his suit against these particular defendants (who are private companies and their employees) is not subject to the PLRA's exhaustion requirement and that these two claims concern non-grievable issues under the OGP. *See* dkt. 39.

Mr. Garland's argument that this suit is not subject to the PLRA is not supported by any legal authority and is, in fact, directly contradicted by the statute's language. The exhaustion requirement applies to any action "brought with respect to prison conditions . . . by a prisoner." 42 U.S.C. § 1997e(a). Thus, the PLRA's exhaustion requirement comes into play in suits brought by certain plaintiffs (prisoners) and raising certain issues (prison conditions) no matter the defendant. Mr. Garland's assertion that the exhaustion requirement does not apply to suits against private companies and their employees is not supported by the PLRA's language or, so far as the Court is aware, any judicial precedent.

5

Mr. Garland's argument that his Lyrica and medical-bed claims concern non-grievable issues also lacks support. He first argues that the claims are non-grievable because he is pursuing them through federal law and because the OGP makes "Federal, state, and local law" non-grievable issues. *See* dkt. 37-1 at 14. Mr. Garland is seeking relief in this Court for a violation of a right secured by federal law. That is true of every prison-condition suit filed in this Court, including those that are dismissed under the PLRA's exhaustion provision. Mr. Garland is not challenging any law; he is challenging the defendants' provision for his medical needs.

Mr. Garland also argues that his claims are non-grievable because they concern personal property and tort claims. *Id* at 15. Again, the underlying issues Mr. Garland is seeking to resolve concern his medical care and the prison's provision of certain medication and equipment to treat his medical conditions. They do not concern any property that Mr. Garland owned or his presentation (or the prison staff's denial) of a tort claim.

The Lyrica and medical-bed claims raise issues falling squarely within the portion of the OGP stating what issues *are* grievable. The denial by prison medical staff of medication and medical equipment necessarily concerns the staff's medical policies and rules, the way the staff interprets those policies and rules, the staff's actions, and "concerns relating to conditions of care." *Id.* at 14. In fact, Mr. Garland's grievance records show that he filed grievances regarding his medical bed and the denial of other medical treatment and supplies. *See id.* at 51–107. These grievances were not rejected for raising non-grievable issues; they were accepted and received rulings.

In short, the undisputed evidence shows that the OGP was available to Mr. Garland as a means for resolving his Lyrica and medical-bed issues and that he did not exhaust the remedies the OGP provided. In light of 42 U.S.C. § 1997e(a), these claims should not have been brought

6

and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## V. Conclusion

For the reasons discussed in this Order, the defendants' motion for partial summary judgment, dkt. [35], is **granted**. Mr. Garland's Lyrica and medical-bed claims are **dismissed with prejudice**. Because those were the only claims pending against the GEO Group, Hannah (Foster) Winningham, and Roy Davis, the **clerk is directed** to terminate them as defendants. No partial final judgment shall issue at this time.

This action will continue with Eighth Amendment claims against Dr. Ippel for failing to order a proper diet; against Wexford and Corizon for refusing IV-IG treatment; and against Wexford for refusing medicated tissues. The partial stay in this action is **lifted**, and a schedule governing the development of the remaining claims shall be issued in a separate Entry.

**IT IS SO ORDERED.**

Date: 1/16/2019

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KENNETH GARLAND
143353
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Britney Jade McMahan
KATZ KORIN CUNNINGHAM, P.C.
bmcmahan@kkclegal.com